IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DONNA BLACK,                                    )
                                                )
                Plaintiff,                      )
                                                )
        v.                                      )        CIVIL ACTION NO. 2:15-cv-150-TFM
                                                )                    (WO)
CAROLYN W. COLVIN,                              )
Acting Commissioner of Social Security,         )
                                                )
                Defendant.                      )

## MEMORANDUM OPINION and ORDER

### I. Introduction

In this case, the ALJ determined that a 57-year old plaintiff with disc degeneration,

sore knees, and chest pain upon exertion can return to her past work as a waitress.  Plaintiff

Donna Black ("Plaintiff" or "Black") applied for disability insurance benefits pursuant to

Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that she is unable to

work because of a disability.  Her application was denied at the initial administrative level.

Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").

Following the hearing, the ALJ found that Black was not under a "disability" as defined in

the Social Security Act and denied Plaintiff's claim for benefits.  The Appeals Council

rejected a subsequent request for review.  Consequently, the ALJ's decision became the final

decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*,

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3).  Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be REVERSED and REMANDED.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  Medical Background

In 1995, Black underwent a lumbar laminectomy. R. 494. On August 15, 2010, Black suffered a heart attack. She was diagnosed with coronary artery disease and underwent an emergency heart catheterization and revascularization with stent placement. R. 315-81. In January 2011, she underwent an additional heart revascularization and stent

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

placement procedure.  R. 280-91.

On October 11, 2011, Black went to Physical Express, complaining of pain, numbness, tingling, and a burning sensation in the right wrist and that her middle finger "locks up."  R. 422.  On October 19, 2011, Black returned to Southeastern Cardiology Consultants for a follow-up appointment. R. 403.  The nurse practitioner noted that Black walks one or two times a week.  R. 404.  He assessed carotid bruit and coronary artery disease and recommended an ultrasound, to increase her prescription for Livalo, and "recommended starting or continuing a regular exercise program for good health." R. 405. Dr. Thomas J. Wool, a cardiologist, concurred with the diagnostic assessment and plan. *Id.* A carotid doppler report conducted on October 24, 2011, indicates "right internal carotid artery has moderate disease with stenosis of 40-59%, probably mid range; left internal carotid artery has moderate to severe disease with stenosis of 60-79%, probably low range; left common carotid artery also has moderate disease throughout; [and] vertebral flow is antegrade bilaterally." R. 407.   A nerve conduction velocity test conducted on October 25, 2011, indicates carpal tunnel syndrome, moderately severe on the right and mild on the left. R. 410.

On November 1, 2011, Black returned to Physical Express complaining of chest pain lasting in duration for six days, as well as pressure, weakness, and a tired feeling. R. 420. On November 14, 2011, Black underwent a right carpal tunnel release procedure. R. 488. During a follow-up appointment on November 29, 2011, Dr. Hussein Turki, the surgeon, noted that Black's "numbness is much improved" and that she "has some incision pain,

4

which is normal." R. 484. On January 26, 2012, Dr. Warren G. Brantley, a psychologist,

conducted a consultative mental examination, in which he found that Black "appears to be

quite capable of working . . . [and] capable of doing children's daycare." R. 492.

On January 28, 2012, Dr. Stuart May, a gynecologist, conducted a consultative

examination. R. 495. The physician noted that Black was "able to walk to the exam room

without assistance and sat comfortably" and that "[s]he got on and off the exam table, and

took her shoes off and put them back on without difficulty." *Id*. He also found as follows:

> There is a scarcity of positive findings in this claimant. She does have a
> positive straight leg raising test on the left. No muscle spasms, crepitus,
> effusion, or trigger points. Both knees were tender to movement, but range of
> motion was normal.

R. 497. An x-ray ordered by Dr. May indicated "mild tricompartmental degenerative

osteoarthritis most significant in the patellofemoral joint and medial joint compartment" and

"a small joint effusion." R. 500. Dr. May diagnosed Black with coronary artery disease,

degenerative disc disease of the lumbar spine, and degenerative joint disease of the knees.

R. 497.

On April 25, 2012, a carotid doppler report indicated that "right and left ICA have

moderate disease with a stenosis of 40-59%, probably mid-range" and "right distal common

carotid artery and mid left common carotid artery have mild to moderate plaque formation"

with "verterbral flow . . . antegrade bilaterally." R. 503.

On April 30, 2012, magnetic resonance imaging ("MRI") of the lumbar spine

indicated the following:

There are fatty changes on both sides of the disc space at L5-S1 consistent with miotic type 2 changes. All the discs in the lumbar spine appear to be slightly dessicated. There is marked disc space narrowing at L5-S1. The conus medullaris ends at the L1-L2 level. On the axial images, T11-T12, T12-L1 there is minimal disc bulge.

At L1-L2, there is diffuse disc bulge causing mild central stenosis.

At L2-3, there is diffuse disc bulge causing minimal central stenosis.

At L4-5, there is a diffuse disc bulge and facet degenerative changes causing mild-to-moderate central stenosis. There may be some minimal left-sided foraminal stenosis.

At L5-S1, there is a diffuse disc bulge and facet degenerative changes causing mild central stenosis and bilateral foraminal stenosis, left greater than right.

R. 507.

On May 30, 2012, MRI of the cervical spine indicated the following:

1. C4-5 left disc protrusion, narrowing the left lateral recess and neural foramen.

2. Minimal C3-4 and C5-6 spinal stenosis.

3. Tiny C5-6 annulus tear.

R. 508.

On June 18, 2012, Black began receiving treatment at the Alabama Pain Management Center for her complaints of neck and lower back pain. R. 510. Dr. William Montiel found "right loading cervical spine positive; cervical palpation revealed tenderness; painful cervical range of motion; [and] decreased cervical range of motion." R. 511. He also found "decreased lumbar spine range of motion; painful lumbar spine range of motion; lumbar spine palpation revealed tenderness; the straight leg raising test is positive on the right." *Id*.

6

Dr. Montiel's diagnostic assessment was cervical radiculitis (primary); degenerative disc disease; cervical spinal stenosis; and cervicalgia. R. 512. Dr. Montiel administered a cervical injection and prescribed Endocet for the treatment of pain. *Id*. Black received additional injections for the treatment of her cervical and lumbar pain on July 9, 2012, July 25, 2012, September 17, 2012, and November 26, 2012. R. 517-520, 531.

On October 29, 2012, Black returned for a follow-up appointment at Southeastern Cardiology Consultants, complaining of periodic pain under her left arm and back. R. 523. The nurse practitioner noted that Black's chest discomfort "does seem to have some relationship to exertion" and is "worrisome for cardiac etiology." R. 525. His diagnostic assessment was coronary artery disease. The nurse practitioner specifically noted Dr. Dilip C. Patel concurred with the nurse practitioner's assessment and plan, including a prescription for isosorbide and an order for an electrocardiogram ("EKG"). *Id*.

On November 5, 2012, the results of the EKG were "abnormal." R. 546. During a stress test, Black suffered from "some chest pain" after three minutes and "sharp" pain after five minutes of walking on the treadmill. *Id*. Black continued to suffer from some chest pain after the conclusion of the exam. *Id*. A dual isotope imaging report, however, indicated no evidence of ischemia and a low probability of obstructive coronary artery disease. R. 542.

On December 10, 2012, Black returned to Alabama Pain Management complaining of cervicalgia radiating into her right shoulder; right leg tingling with position, mostly while sitting; and low blood pressure. R. 533. She rated her neck pain as a 6 on a ten-point scale. *Id*. Upon examining Black, Dr. Monteil noted "cervical palpation revealed tenderness; right

7

loading cervical spine positive; painful cervical range of motion; decreased cervical range of motion." R. 533. In addition, he found "decreased lumbar spine range of motion; mild painful lumbar spine range of motion; the straight leg raising test is positive on the right." *Id*. A neurologic examination also indicated "tingling radiating to L4-5 dermatomes." *Id*. Dr. Monteil prescribed Nucynta tablets. *Id*.

On December 13, 2012, Black went to Southeast Cardiology Consultants complaining of exertional dyspnea and occasional chest tightness. R. 536. She "asked about exercising on the treadmill." R. 536. The nurse practitioner noted that Black walks one or two times a week. R. 537. He found that Black "is improved and had a negative stress test" and that she "was encouraged to begin exercising gradually." R. 538. His diagnostic assessment was coronary artery disease. *Id*.

On February 18, 2013, Oluyinka Adediji, a consultative physician, conducted a musculoskeletal examination. R. 549-553. His diagnostic assessment was neck pain secondary to cervical spondylosis; low back pain secondary to lumbar disc disease and spondylosis; and coronary heart disease, stable. R. 553. Dr. Adediji noted Black's "main limiting factor is pain" and that "[s]he is going to need spine protective restriction in terms of weight bearing, stooping or crouching." *Id*. He found that Black has the ability to sit for no more than three hours and stand or walk no more than one hour at a time without interruption. R. 555. He also found that she is able to sit for no more than six hours and stand or walk for no more than three hours in an eight-hour work day due to her lower back and neck pain. *Id*. In addition, Dr. Adediji indicated that Black can never stoop or crouch

8

and can only occasionally climb stairs, balance, kneel, and crawl.  R. 557.

On March 1, 2013, Dr. Dexter Walcott conducted an examination of Black's bilateral knees.  The orthopedic specialist noted a history of bilateral knee problems and "multiple problems with back, neck and back procedure and has neck trouble now."  R. 561.  Black indicated that her knees "pop" and hurt upon standing and that she has some leg weakness. X-rays indicated "some mild patelloremoral arthritis and mild medial compartment narrowing." *Id*.  Dr. Walcott's diagnostic impression was bilateral knee, right greater than left, chondromalacia of the patella.  He administered an injection of Depo-Medrol, Lidocaine, and Marcaine, and recommended rehabilitation exercises at home and an MRI scan of the most symptomatic knee if her condition did not improve.  *Id*.

## IV.  The Issues

### A.  The Commissioner's Decision

Black was 57 years old at the time of the hearing and is a high school graduate.  R. 35. She has prior work experience as a waitress at Momma's Country Kitchen between 1987 and 1999 and as a home daycare worker between 1999 and 2011.  R. 37, 41, 42.  Black alleges that she became disabled on August 1, 2011, due to coronary artery disease, cervical degenerative disc disease, carpal tunnel surgery, spinal stenosis, compartmental degenerative joint disease of the right knee, depression, and hypertension.  R. 42-44.  After the hearing, the ALJ found that Black suffers from severe impairments of obesity: cervical spondylosis with radiculopathy: lumbar disc diesase and spondylosis; status post coronary artery disease, stable with stent; status post right carpal tunnel surgery; bilateral mild patella femoral

9

arthritis and mild medial compartment narrowing of the knees; and carpal tunnel syndrome. R. 15. He also found that she suffers from non-severe impairments of hypertension and depression. R. 15-16. The ALJ found that Black retains the residual functional capacity to perform light work with the following restrictions:

> . . . [T]he claimant can sit up to three hours without interruption and a total of six hours over the course of an eight-hour workday. The claimant can stand and/or walk up to three hours without interruption and a total of six hours each over the course of an eight-hour day. . . . She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She cannot work at unprotected heights. She cannot work with hazardous machinery. . . . She can occasionally work in humidity and wetness. She can occasionally work in dusts, odors, fumes, gases, poorly ventilated areas and other pulmonary irritants. She cannot work in extreme temperatures. She cannot work while subject to vibration. . . . [S]he cannot perform rapid or production rate work."

R. 18. Relying in part on testimony from a vocational expert, the ALJ concluded that Black is able to return to her past work as a waitress. R. 24. Accordingly, the ALJ concluded that Black is not disabled. *Id*.

### B. The Plaintiff's Claims

Black presents the following issues for review:

(1)     The ALJ erred in his evaluation of two non-treating medical source opinions.

(2)     The ALJ erred in finding Black retained the residual functional capacity to return to her past relevant work as a waitress.

(3)     The ALJ erred in his evaluation of Black's statements regarding the nature and limiting effects of her physical impairments.

(4)     The ALJ failed to consider the combined impact of Black's impairments.

Doc. 12, Pl's Br., p. 1.

## IV. Discussion

A disability claimant bears the initial burden of demonstrating the existence of a disability. *Lucas v. Sullivan,* 918 F.2d 1567 (11th Cir.1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and his family or friends; and (4) the claimant's age, education, and work history. *Tieniber v. Heckler,* 720 F.2d 1251 (11th Cir.1983).  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735–36 (11th Cir.1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphasis added). Within this analytical framework, the court will address the plaintiff's claims.

Black argues that the ALJ erred in affording significant weight to the opinions of Dr. Robert Heilpern, a non-examining state agency physician, and Dr. Oluyinka S. Adediji, a

consultative examining physician, when determining that she has the residual functional capacity to perform light work.  Specifically, she asserts that Dr. Heilpern's opinion is not based on a review of all the medical records.  In addition, Black contends that the ALJ failed to specify his reasons for affording significant weight to the opinions of the non-treating physicians.

The ALJ, without explanation, affords significant weight to the opinion of Dr. Heilpern.  The problem with the ALJ's reliance on the non-examining physician's opinion is that Dr. Heilpern did not review all the relevant medical evidence before forming his opinion. In addition, his opinion is inconsistent with other expert opinions.  The transcript indicates that, upon reviewing most of the medical records dated on or before March 2, 2012, Dr. Heilpern found that Black is able to stand and/or walk for a total of six hours in an eight-hour work day.  R. 93.  He also found that she is able to sit for a total of 6 hours in an eight-hour work day and occasionally stoop, kneel, crouch, and crawl.  R. 94.   Dr. Heilpern concluded that Black has the residual functional capacity to return to her past work as a daycare provider.  R. 97.  Both the ALJ and the vocational expert, however, determined that Black is unable to return to her past work as a daycare provider.  In addition, Dr. Heilpern's opinion is inconsistent with the opinion of Dr. Adediji.

On February 18, 2013, Dr. Adediji, a doctor of internal medicine, performed a consultative evaluation.  R. 549-553.  His diagnostic assessment was neck pain secondary to cervical spondylosis; low back pain secondary to lumbar disc disease and spondylosis; and coronary heart disease, stable.  R. 553.  Dr. Adediji noted  Black's "main limiting factor is

pain" and that "[s]he is going to need spine protective restriction in terms of weight bearing, stooping or crouching." *Id*.   He found that Black is able to sit for no more than three hours and stand or walk no more than one hour at a time without interruption.  R. 555.  He also found that she is able to sit for no more than six hours and stand or walk for no more than three hours in an eight-hour work day due to her lower back and neck pain. *Id*.  In addition, Dr. Adediji indicated that Black can never stoop or crouch and can only occasionally climb stairs, balance, kneel, and crawl.  R. 557.   Despite the inconsistent findings, the ALJ inexplicably assigned "significant weight" to the opinions of both Dr. Adediji and Dr. Heilpern.

During the hearing, the ALJ posed a hypothetical to the vocational expert which included restrictions similar to those specified by Dr. Adediji.  Specifically, the ALJ asked:

> . . . [A]ssume that such an individual could not stand or walk at least four hours total over the course of an eight-hour day, would she be able to perform any of her past relevant work?

R. 75.  The vocational expert testified that such an individual would not be able to perform her past work as a waitress. *Id*.  The ALJ, however, ignored both Dr. Adediji's opinion regarding the duration Black is able to stand and/or walk and the vocational expert's opinion that a person with such restrictions cannot perform work as a waitress when concluding that Black can return to her past work as a waitress.

Black also argues that the ALJ improperly discredited her allegations of pain.  Black testified that her pain was so severe that she has been unable to work since the date of onset, August 1, 2011.  She also alleged that his pain and impairments lasted for a continuous

period of not less than twelve months.   The ALJ did not credit this testimony.  The court cannot conclude that the ALJ's discrediting of Black's allegation of severe pain is supported by substantial evidence.

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.  *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain.  *Landry,* 782 F. 2d at 1553.  In this circuit, the law is clear.  The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such

14

support then the testimony must be accepted as true.  *Hale*, 831 F.2d at 1012.

As previously discussed, the medical records indicate that Black suffers from a combination of impairments, including arthritic knees, bulging discs in her cervical and lumbar spine, and coronary artery disease.  At the administrative hearing, Black testified that she is unable to stand or walk for long periods of time, but that she is able "to do something maybe for 30 to 45 minutes to an hour" and "then lay down on the couch . . . for about an hour or so." R. 54, 56-57.

The ALJ found that Black is "only partially credible, as her allegations appear inflamed."  R. 22.  Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"  *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223.  The ALJ concluded that Black's allegations regarding her impairments were not credible to the extent alleged and discounted that testimony.

15

This court cannot conclude that the ALJ's reasons for discrediting allegations of pain are supported by substantial evidence.  For example, the ALJ found that the medical records show that Black's cardiovascular examination was normal.  The medical record, however, indicates that the results of an electrocardiogram were "abnormal" and that Black suffered from chest pains during and after a stress test on November 5, 2012.  R. 546.  The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992)

The ALJ also discredited Black's allegations of pain on the basis that she "provides childcare for her children." R. 23.  The evidence indicates that Black's grandchildren were ten and thirteen years old, that they "do their own thing," and that their parents live down the street.  R. 59.  The ALJ also emphasizes that Black "walks up and down her street and her yard every day" and "even inquired about exercising on the treadmill." R. 23.  The ALJ, however, does not consider the evidence in its entirety.  A cardiovascular questionnaire indicates that it takes "thirty minutes or so" for Black to walk half of a mile.  R. 228. Furthermore, the court cannot conclude that inquiring whether it is safe to exercise on a treadmill is a basis to discredit an individual's allegations of pain. In order to fulfill his obligations, the ALJ must, at the very least, resolve the inconsistencies in the evidence, rather than selectively choosing items to support his decision. *See Marbury, supra*.

The ALJ compounded his errors by failing to consider the effect the combination of

16

all of her impairments have on her ability to perform light work as a waitress. As previously discussed, the ALJ ignored objective medical evidence which substantiates Black's allegations of pain arising from several impairments, including coronary artery disease, bulging discs, and arthritic knees. The ALJ must consider every impairment alleged by Black and determine whether the alleged impairments are sufficiently severe - either singularly or in combination - to create a disability. *See Gibson v. Heckler,* 779 F.2d 619, 623 (11th Cir. 1986).

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

For these reasons, the court concludes that the Commissioner erred as a matter of law, and that the case should be reversed and remanded for further proceedings.

## V.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

17

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 F. App'x. 241, 242 fn.1 (11th Cir. 2008).

A separate final judgment will be entered.

DONE this 3rd day of February, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE